UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LANA HOLLAND,

    Plaintiff,

v.                                                       Case No.:  2:21-cv-858-KCD

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

Plaintiff Lana Holland sues under 42 U.S.C. §§ 405(g) and 1383(c)(3) to challenge the Commissioner of Social Security's decision denying her application for disability insurance benefits and supplemental security income. (*See* Doc. 1.)[1] For the reasons below, the Commissioner's decision is affirmed.

### I. Background

Holland filed for benefits in 2018, claiming she could no longer work because of osteoarthritis, diabetes, pinched nerves, and heart problems. (Tr. 365.) Holland's initial application was denied, and she sought further administrative review before the Appeals Council. (Doc. 29 at 1.) Holland

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

prevailed on appeal and the case was sent back for the ALJ to address an inconsistency in the evidence about her past work. (*See* Tr. 178.)

Following remand, the ALJ issued the decision now under review. She found Holland had severe impairments of "diabetes mellitus, peripheral neuropathy, . . . coronary artery disease . . . schizoaffective disorder, bipolar type[,] and post-traumatic stress disorder." (Tr. 14.)[2] Still, the ALJ concluded Holland had the residual functional capacity (RFC) to perform "light work, as defined in 20 CFR 404.1567(b) and 416.967(b)." (*Id.* at 19.) To account for Holland's mental defects, the ALJ added these limitations:

> She can understand, remember, and carry out simple, routine tasks that can be learned and mastered in up to thirty days or less. She can maintain concentration, persistence, or pace within customary norms, work in proximity to and engage in routine interaction with supervisors, coworkers, and occasional contact with the general public. She can make simple, work-related decisions, plan and set goals, adapt to routine work changes, travel and recognize and avoid ordinary workplace hazards.

(*Id.* at 23.)

---

[2] An individual claiming Social Security disability benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

After considering the RFC and other evidence, including the testimony of a vocational expert, the ALJ concluded that Holland could perform her past work as a "fast food worker" and "commercial cleaner." (Tr. 28.) The ALJ thus found Holland not disabled during the relevant time periods. The Appeals Council denied further review, and this lawsuit followed. (Doc. 1.)

## II. Standard of Review

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained that "whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). But the court may not reweigh the evidence

or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

### III. Analysis

Holland offers three arguments on appeal. First, she claims the ALJ did not properly analyze several medical opinions. (Doc. 29 at 14-21.) Second, she says the ALJ failed to comply with the Appeal Council's remand order. (*Id.* at 32.) And finally, according to Holland, the ALJ's decision is constitutionally defective. (*Id.* at 37.) These issues are addressed in turn.

#### A. Medical Opinions

A medical opinion is "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). When confronted with a medical opinion, the ALJ must consider its persuasiveness using several factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, which includes (i) length of

4

the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." *Id.* §§ 404.1520c(a) & (c)(1)-(5), 416.920c(a).

Supportability and consistency "are the most important factors" in determining persuasiveness. *Id.* §§ 404.1520c(b)(2), 416.920c(a). And because of their importance, the ALJ must explain "how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* Put simply, the ALJ must assess supportability and consistency for each medical opinion offered by the claimant. *See, e.g.*, *Pierson v. Comm'r of Soc. Sec.*, No. 6:19-CV-01515-RBD-DCI, 2020 WL 1957597, at *6 (M.D. Fla. Apr. 8, 2020) ("[T]he new regulations require an explanation, even if the ALJ (and the Commissioner) believe an explanation is superfluous.").

"Supportability" refers to how well a medical opinion is bolstered by objective medical evidence and explanations provided by the medical source giving the opinion. "Consistency" is a measure of how the medical opinion aligns with evidence from other sources (medical and nonmedical). 20 C.F.R. § § 404.1520c(c), 416.920c(c). In assessing supportability and consistency, the regulations provide that the ALJ need explain only the consideration of these factors on a source-by-source basis—the ALJ need not explain the consideration of each opinion from the same source. *Cook v. Comm'r of Soc.*

5

*Sec.*, No. 6:20-CV-1197-RBD-DCI, 2021 WL 1565832, at *2 (M.D. Fla. Apr. 6, 2021).

Holland claims the ALJ failed to follow this framework with four medical sources: Dr. Robert Hander, Dr. Lindsay Stiede, Dr. Berg, and Laura Brown. (Doc. 29 at 16-21.) The Court disagrees. While the ALJ may not have parroted the words "supportability" and "consistency," her decision addressed the required factors through its discussion of the record evidence. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]").

As for supportability, the ALJ explained how the medical opinions from Hander, Stiede, Berg, and Brown were either internally inconsistent, based on an incomplete record, or conflicted with Holland's clinical notes and treatment history. (*See* Tr. 21-27.) For example, in assessing Hander's opinion that Holland could stand or walk for only 2 hours and lift no more than 10 pounds, the ALJ noted that his report lacked a medical evaluation because of Holland failing to submit certain forms. (Tr. 137.) Although Holland disputes this and claims Hander's "RFC . . . was fully formulated," the record suggests otherwise. To state the obvious, a medical opinion rendered on an incomplete record "call[s] into question [its] supportability." *Rivera v. Comm'r of Soc. Sec.*, No. 21-CV-1498 (KHP), 2022 WL 3210441, at *12 (S.D.N.Y. Aug. 9, 2022). The ALJ

6

also cited countless examinations that contained findings of normal mood, normal affect, normal behavior, normal judgment, normal thought content or processes, normal cognition, normal memory, normal gait, normal station, normal ambulation, normal muscle strength and tone, normal range of motion, and normal neurological functioning. (Tr. 545, 602, 605, 612, 615, 661, 737, 761, 767, 774, 781, 787, 792, 796, 799, 807, 810, 820, 825, 831, 837, 845, 851, 888, 966, 1007, 1014, 1445, 1475, 1548, 1627-28, 1721-22, 1726, 1759, 1843, 2124, 2348, 2353, 2458, 2546, 2659, 2736, 2739, 2742, 2743, 3545-46.) Contrary to Holland's suggestion otherwise, this evidence provides the necessary framework for the ALJ to doubt the proffered medical opinions that essentially limit her to sedentary work.

The ALJ addressed consistency too, outlining how the medical opinions from Hander, Stiede, Berg, and Brown conflict with Holland's activities of daily living and treatment history. (*See* Tr. 21-27.) An ALJ may rely on this type of evidence when evaluating a medial opinion's consistency. *See, e.g., Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1306-07 (11th Cir. 2018).

Holland spends much of her brief explaining how the overall medical evidence aligns with Hander, Stiede, Berg, and Brown. She then concludes it was error for the ALJ to "disregard [these] opinion[s]." (Doc. 29 at 17.) This argument is a nonstarter. "Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports

7

[her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). Holland has not done that here. Her brief instead recites facts she perceives as favorable and asks the Court to come out the other way. This is not allowed. "Resolution of conflicts in the evidence, including conflicting medical opinions and determinations of credibility are not for the courts; such functions are solely within the province of the [Commissioner]." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973).

While a different factfinder may well have credited the medical opinions Holland now pushes, that is not the test. The dispositive question here is whether there is "such relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154. "The substantial evidence threshold is not high and defers to the presiding ALJ, who heard testimony and reviewed the medical evidence." *Rodriguez v. Berryhill*, 836 F. App'x 797, 803 (11th Cir. 2020). Given this low bar, the Court must affirm the ALJ's treatment of the challenged medical opinions.

### B. Remand Order

As mentioned, Holland's case was remanded for a second administrative hearing to address an unresolved discrepancy in the evidence. As explained by the Appeals Council:

8

> The Administrative Law Judge found the claimant not disabled at step four of the sequential evaluation process because she is capable of performing past relevant work as a commercial cleaner as actually performed (Finding 6). The Administrative Law Judge found that this work was consistent with the claimant's residual functional capacity for light work . . . . However, the claimant testified that her past work as a commercial cleaner involved lifting up to 50 pounds (Hearing recording, 10:45:22). The vocational expert characterized the job as medium work as actually performed, and in response to a hypothetical question that mirrors the residual functional capacity, the vocational expert indicated the claimant would not be capable of performing this work (Hearing recording, 11:04:20 - 11:05:43). The claimant's work history report suggests the job is more consistent with light work, but it also indicates the claimant was required to climb (Exhibit 5E, pages 4-5). Further evaluation is warranted.

(Tr. 178.)

Following remand, Holland testified that her job as a cleaner at McDonald's required her to get on ladders, stock cleaning supplies, sweep, and mop. (Tr. 66-67.) She also testified to lifting 25 pounds. (*Id.* at 67.) Holland's work history report, however, said the heaviest weight she lifted at McDonald's was ten pounds. (*Id.* at 388-89.) When asked about the discrepancy, Holland said she "probably didn't understand the questionnaire." (*Id.* at 67.) The ALJ probed further, asking whether Holland had completed the form with an attorney. While Holland could not remember how (or if) her attorney was involved, she confirmed that she prepared the report. Finally, when questioned about her prior job as a cleaner at construction sites, Holland could not remember how much she lifted. (*Id.* at 68.)

After hearing this testimony, the ALJ asked a vocational expert whether Holland could perform her past work at McDonald's. The vocational expert was directed to consider the position "as she performed it per [the work history report.]" (Tr. 77.) The ALJ never questioned the vocational expert about whether Holland could perform the McDonald's job as she described it at the hearing. In other words, the ALJ credited the work history report instead of Holland's testimony.

Holland claims the ALJ erred by failing to "explain how she reached the conclusion to use only the work history report and not the [hearing] testimony." (Doc. 29 at 34.) In Holland's view, "[f]urther explanation regarding why the report was deemed more persuasive than [her] testimony" was required. (*Id.*)

The Court again finds no error. The ALJ followed the remand order and investigated the discrepancy between Holland's work history report and her testimony. That inquiry was justifiably brief given Holland's proclaimed lack of memory. The ALJ then chose to credit the work history report completed by Holland over her new, contradictory testimony. ALJ's are allowed to make basic, bread-and-butter credibility determinations (as done here) so long as there is an evidentiary basis for the decision. Holland's work history report, which was prepared when she was represented by counsel, provides all the support needed. *See, e.g.*, *Cartwright v. Heckler*, 735 F.2d 1289, 1290 (11th Cir. 1984) ("Credibility determinations are for the Secretary, not the courts."); *Rose*

10

*v. Comm'r of Soc. Sec.*, No. 6:16-CV-93-ORL-41DCI, 2017 WL 744707, at *3 (M.D. Fla. Feb. 27, 2017) ("Inconsistencies between a claimant's testimony, medical evidence, and daily activities may provide a valid reason for an adverse credibility determination.").

Finally, the ALJ did not need to elaborate further about the credibility determination. The record makes clear that the ALJ relied on Holland's inconsistent work history report. *See Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1259 (M.D. Fla. 2005) ("Where an ALJ decides not to credit a claimant's testimony . . ., the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.").

### C. Constitutional Challenge

It is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President and can be removed only for cause. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). In *Seila Law*, the Supreme Court held that a "for-cause" removal restriction on the President's executive power to remove the Consumer Financial Protection Bureau's director violated constitutional separation of powers. Holland says the invalid structure of the CFPB is "structurally identical" to that of the Social Security Administration, making the latter unconstitutional too. (Doc. 29 at 37.) From there, Holland extrapolates that the ALJ who decided her case "suffer[s] from

11

the unconstitutional taint [of] having . . . decided this case without lawful authority to do so." (*Id.* at 39.)

The Commissioner partly falls on the sword, agreeing that the Social Security Act provision limiting the President's authority to remove the Commissioner without good cause, 42 U.S.C. § 902(a)(3), violates separation of powers. (Doc. 29 at 40.) But according to the Commissioner, this constitutional infirmity does not automatically trigger relief. Holland "must [further] show that the challenged Government action at issue"—the ALJ and Appeals Council's resolution of her specific claim for disability benefits—"was, in fact, unlawful." (Doc. 20 at 43.)

The Commissioner is right. A year after *Seila Law*, the Supreme Court decided *Collins v. Yellen*, holding that the Federal Housing Finance Agency director's statutory for-cause removal protection was similarly unconstitutional. 141 S. Ct. 1761, 1763 (2021). But the Court was careful to explain that even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused her harm. *Id.* at 1787-89. The Court provided examples of such harm:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those

12

> situations, the statutory provision would clearly cause harm.

*Id.* at 1789.

Despite identifying *Collins* as controlling authority, Holland makes no attempt to show how the unconstitutional restriction on the President's power to remove the Commissioner caused her any harm beyond the provision itself being unconstitutional. (*See* Doc. 29 at 37-39.) This is fatal. *Collins* tells us that the ALJ's decision here is not invalid simply because it can be traced back to an official subject to an unconstitutional removal protection. *Id.* at 1788 n.3. Every court to address this issue has consequently rejected Holland's position. There is no reason to chart a new path here. *See Tibbetts v. Comm'r of Soc. Sec.*, 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021); *Herring v. Comm'r of Soc. Sec.*, No. 2:21-cv-322-MRM, 2022 WL 2128801, at *3 (M.D. Fla. June 14, 2022); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *4-6 (M.D. Fla. Nov. 23, 2021); *Vickery v. Comm'r of Soc. Sec.*, No. 5:21- cv-122-PRL, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022).

At bottom, Holland has identified no harm suffered from applying § 902(a)(3). Her constitutional challenge thus fails. *See, e.g.*, *Linnear v. Kijakazi*, No. CV 121-098, 2022 WL 1493563, at *7 (S.D. Ga. May 11, 2022) (noting that

the court "has not found a single instance of a District Judge reversing a Social Security decision on the basis of § 902(a)(3)'s unconstitutionality").

## IV. Conclusion

The ALJ applied the correct legal standards and her conclusion that Holland was not disabled is supported by substantial evidence. The Commissioner's decision is consequently affirmed, and the Clerk is directed to enter judgment against Holland.

**ORDERED** in Fort Myers, Florida on March 1, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies: All Parties of Record